**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Morrow, ) | No. CV-05-3456-PHX-FJM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Jo Anne Barnhart, Commissioner, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

David Morrow ("plaintiff") brought this action seeking review of the Social Security Administration's decision that he is ineligible for supplemental security income and disability benefits. The court has before it plaintiff's motion for summary judgment (doc. 16); defendant's response (doc. 17); defendant's cross-motion for summary judgment (doc. 18), statement of facts (doc. 19) and memorandum of law (doc. 20), and plaintiff's "Response to Defendant's Cross Motion for Summary Judgment; Plaintiff's Reply Re: Motion for Summary Judgment" ("reply") (doc. 21). For the reasons stated below, we deny plaintiff's motion, and grant defendant's cross-motion.

**I.**

Plaintiff filed an application for disability benefits and Supplemental Security Income (SSI) on June 17, 2003, alleging that he became disabled on March 17, 2003, as a result of

injuries to his left hip, right shoulder and left knee; arthritis and related damage; a hernia, and carpal tunnel. After a hearing held on November 29, 2004, the Administrative Law Judge ("ALJ") found plaintiff ineligible for benefits. The Appeals Council denied plaintiff's Request for Review. Plaintiff then brought this action pursuant to 42 U.S.C. § 405(g).[1]

## II.

An ALJ's decision to deny benefits will stand unless "it is not supported by substantial evidence or is based on legal error." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. An ALJ's decision will be upheld "if supported by inferences reasonably drawn from the record," and deferred to even where "evidence exists to support more than one rational interpretation." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." Id. at 1196. Here, the ALJ found that plaintiff was not disabled because he had "the residual functional capacity to perform substantially all of the full range of sedentary work." Administrative Record Transcript ("Tr.") at 28.

### A.

In determining whether there is substantial evidence to support an ALJ's decision, we "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." Id.

---

[1] Plaintiff filed a subsequent claim for benefits, and has received disability benefits, but not SSI, from September 2005 to the present after establishing a March 22, 2005 disability onset. See Plaintiff's Motion for Summary Judgment at 4. This action challenges only the decision denying plaintiff's June 17, 2003 claims, through which he alleges a March 17, 2003 onset.

1    Plaintiff first moves for summary judgment arguing that the ALJ's disability
2 determination was not supported by substantial evidence because the ALJ improperly
3 evaluated the medical evidence. In particular, plaintiff alleges that the ALJ's conclusion was
4 based on two exhibits, which plaintiff claims pre-date the onset of disability. See Motion for
5 Summary Judgment at 6 (citing a February 5, 2004 Physical Residual Functional Capacity
6 Assessment, Tr. at 164-71 ("February 5, 2004 Assessment") and an October 22, 2003
7 neurological consultation by Kenneth Root, D.O., Tr. at 148-50 ("October 22, 2003 Root
8 Consultation")). Plaintiff challenges this purported evidentiary basis in nine different ways.
9 Yet the ALJ's decision was based on much more than two exhibits, and plaintiff cannot rest
10 on an analysis of the assessment of these exhibits alone.

11    Nevertheless, we address each of plaintiff's arguments, although they rely on the
12 assertion that the ALJ's decision is based on an improper evidentiary foundation. Plaintiff
13 first asserts that the ALJ improperly relied on the October 22, 2003 Root Consultation.
14 Plaintiff contends that consultation was clearly refuted in Kenneth Root's November 10, 2003
15 report, that the ALJ allegedly disregarded. See Motion for Summary Judgment at 6-7 (citing
16 a November 10, 2003 office visit report by Kenneth Root, D.O., Tr. at 145-47 ("November
17 10, 2003 Root Report")). We reject these arguments for several reasons. First, although the
18 October 22, 2003 Root Consultation included a review of a 1999 MRI scan, it also involved
19 a physical examination. See Tr. at 148-50. As such, it is not an unreliable pre-onset
20 evaluation that the ALJ should have disregarded.[2] Second, the ALJ had no duty to expressly
21 include an evaluation of the November 10, 2003 Root Report. So long as the ALJ's decision
22 is supported by inferences reasonably drawn from the record, we will uphold it, even if it
23 fails to mention one exhibit that may support an equally rational, yet different, conclusion.
24 Third, the November 10, 2003 Root Report does not contradict the October 22, 2003 Root

---

[2] The ALJ's meticulous review of the record includes numerous citations to post-onset medical evidence. See, e.g., Tr. at 21-22 (citing a March 24, 2003 abdominal ultrasound; an April 11, 2003 physical examination; an October 29, 2003 EMG; an October 31, 2003 MRI; a November 25, 2003 MRI; and a January 6, 2004 bone density test).

- 3 -

1  Consultation. See November 10, 2003 Root Report, Tr. at 145 (stating that on November 10, 2  2003, plaintiff was "clinically . . . the same" as he was on October 22, 2003). Finally, even 3  if there was a conflict between the two exhibits, the ALJ had the authority to resolve it.

4  Second, plaintiff contends that the November 10, 2003 Root Report automatically 5  qualifies plaintiff as disabled "without further inquiry" under 20 C.F.R. Part 404, Subpart P, 6  Appendix 1, § 1.04 (2007), because it states that plaintiff's right arm pain was "at least 7  partially explained on the basis of a radiculopathy from disc compression at C5-6." Motion 8  for Summary Judgment at 7. This report at most indicates an impairment, which on its own 9  gives us no authority to question the ALJ's disability finding. See Matthews v. Shalala, 10 10  F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of 11  a disability.").

12  Third, plaintiff argues that the ALJ improperly relied on the February 5, 2004 13  Assessment that concluded that plaintiff retained residual functional capacity because (1) it 14  "it is not clear what served as a basis" for the report's analysis, (2) "[i]t seems incontrovertible 15  that the report was completed without reference to an October 31, 2003" study, and (3) the 16  report conflicts with two separate radiological opinions that both found evidence of a disc 17  herniation. Motion for Summary Judgment at 7.

18  We reject each of these contentions. First, plaintiff's speculations regarding the 19  February 5, 2004 Assessment do not give us reason to overturn the ALJ's conclusion. We 20  do not review the manner in which medical conclusions were derived, but rather review the 21  ALJ's assessment of the record as a whole. Further, nothing in the record suggests that the 22  state agency consultant responsible for the February 5, 2004 Assessment did not base its 23  conclusion on all evidence in plaintiff's file. Finally, even if the radiological opinions 24  actually conflicted with the February 5, 2004 Assessment, our conclusion would not change. 25  Those opinions form part of the record that the ALJ was charged with assessing, and did, in 26  fact, assess. See Tr. at 22 (citing an October 31, 2003 MRI scan that showed a disc 27  herniation); id. at 23 (citing a September 2004 MRI that revealed a disc herniation). If any 28  conflict was present, the ALJ had authority to resolve it.

1    Next, plaintiff argues that the ALJ's disability conclusion should be overturned
2 because it is refuted by a December, 2004 neurological assessment that was not available to
3 the ALJ prior to the disability decision. See Motion for Summary Judgment at 7. However,
4 that assessment does not detract from the ALJ's conclusion. Although the assessment
5 acknowledges that plaintiff had "a disc herniation," it concludes that plaintiff's symptoms
6 "don't really sound like nerve root symptoms," and that plaintiff "didn't have anything
7 significantly wrong with his thoracic spine" or his lumbar spine. Tr. at 302.

8    Fifth, plaintiff contends that the ALJ's decision was improper because of the manner
9 in which it assessed findings made by Dr. Timothy Harrington. See Motion for Summary
10 Judgment at 7 (citing Tr. at 268). Specifically, plaintiff contends that the judge did not give
11 enough weight to some of Dr. Harrington's "positive findings," and also did not consider that
12 Harrington's analysis was "blatantly problematic" because it was "[p]ossible Dr. Harrington
13 did not have access to the February 2004 lumbar radiological test." Id. at 8.

14    We reject both of these arguments. The ALJ's disability decision need not include a
15 line-by-line analysis of each piece of medical evidence so long as the record as a whole
16 supports its conclusion. Here, the ALJ noted that Harrington's report indicated that plaintiff
17 had "degenerative disc changes," but that aside from irritation in the lower extremities, "none
18 of them were causing any neurological dysfunction." Tr. at 23. Therefore, the ALJ noted
19 the existence of an impairment, which, by itself, is not conclusive proof of disability.
20 Second, the fact that Dr. Harrington may or may not have had access to the February 2004
21 test is immaterial because the ALJ assessed that very test. See Tr. at 23.

22    Sixth, plaintiff argues that the ALJ's conclusion was improper because it relied on a
23 state agency's report that pre-dated a February 24, 2004 MRI. See Motion for Summary
24 Judgment at 8. We reject this argument because although the report may have pre-dated the
25 February 2004 MRI, the ALJ's decision included an assessment of that MRI's findings. See
26 Tr. at 23.

27    Next, plaintiff contends that the ALJ's decision "did not give weight to the most recent
28 report of orthopedist Jody Daggett, M.D." Motion for Summary Judgment at 9. Plaintiff

- 5 -

1 acknowledges that the ALJ "mentioned" Daggett's report, but contends that the ALJ also
2 ignored the fact that plaintiff's clinical presentation "corresponded to the cervical pathology
3 identified by radiology study." Id. Plaintiff's contention that the ALJ "ignored" a portion of
4 Daggett's report does not persuade us that the ALJ's review of that report was anything but
5 thorough. Further, the Daggett conclusion that plaintiff highlights does not support reversal
6 because the existence of an impairment is not, by itself, conclusive proof of disability.

7 Eighth, plaintiff argues that the ALJ improperly discounted the opinion of plaintiff's
8 treating physician, Dr. Rooney, whose findings, plaintiff contends, support a decision
9 contrary to the ALJ's. See Motion for Summary Judgment at 6. However, even if Rooney's
10 findings supported a contrary conclusion, that fact alone is not fatal to the ALJ's decision,
11 which we conclude is supported by substantial evidence.

12 Further, an ALJ may reject controverted testimony of a treating physician if "specific
13 and legitimate reasons supported by substantial evidence in the record for doing so" are
14 provided. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). " 'Although a treating
15 physician's opinion is generally afforded the greatest weight in disability cases, it is not
16 binding on an ALJ with respect to the existence of an impairment or the ultimate
17 determination of disability' " and " '[t]he ALJ may disregard the treating physician's opinion
18 whether or not that opinion is contradicted.' " Batson, 359 F.3d at 1195 (citations omitted).
19 An ALJ may discredit treating physicians' opinions that are "unsupported by the record as
20 a whole." Id.

21 Here, the ALJ noted that Dr. Rooney's opinion was "conclusory and unsupported by
22 the medical evidence" because the doctor "relied quite heavily" on plaintiff's subjective
23 report of symptoms and limitations, and "seemed to uncritically accept as true most, if not
24 all, of what the claimant reported." Tr. at 25. These reasons are legitimate, and as discussed
25 below, the record supports the ALJ's findings that plaintiff's subjective allegations regarding
26 his impairments were not credible. Therefore, the ALJ was justified in discounting the
27 treating physician's opinions.
28

Finally, plaintiff asserts that the ALJ's finding of no disability was unfounded because plaintiff's ability to perform substantial gainful activity was limited by "the presence of a diagnosed severe mental impairment." Motion for Summary Judgment at 12. In its reply, plaintiff additionally argues that the ALJ failed to consider mental health assessments made by examining and consulting health experts. See Reply at 3. According to plaintiff, the ALJ gave no weight to expert opinions that plaintiff has a restricted mental residual functional capacity. Id. at 4.

The ALJ assessed both of the opinions plaintiff argues were given no weight. Tr. at 23 (citing the February 25, 2004 psychological evaluation by Steven C. Hirdes and the March 2004 report by a state agency consultant). The ALJ noted that Hirdes' evaluation resulted in a diagnosis of "major depressive disorder, single episode, serve with pre-psychotic features (paranoid ideation), and anxiety disorder . . . with panic features." Id. The ALJ also stated that Hirdes concluded that plaintiff "had difficulty dealing with others, difficulty getting through school, and some paranoia." Id. However, the ALJ noted Hirdes' assessment that plaintiff was "able to immediately learn and recall a list of three simple words . . . after a brief delay and distraction," and was able to "complete a simple three-step instruction." Id. Therefore, although Hirdes' evaluation suggests the existence of impairments, that finding alone does not necessarily result in the conclusion that plaintiff was disabled. Rather, Hirdes' report supports the conclusion that plaintiff retained a residual functional capacity for substantial gainful activity.

A state agency medical consultant evaluated plaintiff's residual functional capacity on March 5, 2004. Tr. at 192-194. The consultant found that certain aspects of plaintiff's understanding and memory, sustained concentration and persistence, and social interaction and adaptation were moderately limited. Id. However, as the ALJ noted, the consultant concluded that plaintiff could "recall simple, non-detailed instructions" and "perform tasks needing little or no contact with others especially the general public." Id. (citing the March

5, 2004 report, Tr. at 194). Therefore, the ALJ weighed this particular report, whose findings support, rather than detract from, the ALJ's conclusion.

In sum, the ALJ properly assessed the medical evidence in concluding that plaintiff had a residual functional capacity to perform sedentary work. The ALJ found that plaintiff had severe impairments, including "chronic cervical and upper extremity pain . . . possible radiculopathy . . . back pain . . . major depressive disorder and anxiety disorder." Tr. at 24. None of these severe impairments, either as a whole or individually, qualified as an impairment that would require a finding that plaintiff was disabled. Id. Also, the ALJ found that plaintiff had a spinal condition, but that the condition did not result in "a compromise of the nerve root or the spinal cord" that would require a finding that plaintiff was disabled. Id.

Furthermore, the ALJ noted that "[r]adiological studies of [plaintiff's] abdomen, hip, right shoulder, and thoracic spine were all normal," and that although MRIs of the cervical spine, lumbar spine and thoracic spine showed degenerative disc changes, none caused "any neurological dysfunction with the possible exception of some irritation in the lower extremities." Id. An EMG revealed "no evidence of entrapment neuropathy or axonal loss radiculopathy." Id. Groin pain suggested muscle tear but no herniation. Id. A colonoscopy revealed benign findings, even though a rectal polyp was removed. Id. Plaintiff's shoulder pain was "on and off," and did not cause "persistent decreased range of motion." Similarly, any lumbar-related impairment did not result in a change in physical function. Id.

As a result, we conclude that the ALJ's medical evidence findings are based on reasonable inferences drawn from the record, and are supported by substantial evidence. Therefore, we deny plaintiff's motion for summary judgment on this ground.

B.

An ALJ may use ordinary techniques of credibility evaluation, but must make specific findings to support a negative credibility assessment. See Bunnell v. Sullivan, 947 F.2d 341,

345, 346 (9th Cir. 1991). Only *credible* pain testimony should contribute to a conclusion that plaintiff is disabled. Id. at 345.

Plaintiff's second summary judgment argument contends that the ALJ made improper credibility findings. Specifically, plaintiff argues that the ALJ's assessment of plaintiff's pain allegations were improper. See Motion for Summary Judgment at 10. In challenging the ALJ's credibility assessment, plaintiff cites to portions of the decision that mention pain allegations, and cites two non-binding cases. See id. at 7. Plaintiff also notes that he is an individual with limited education, who "resides in a small town," and has, at various points in his life, complained of pain and discomfort, which have rendered his daily activities difficult. Id. at 11. None of these allegations are accompanied by citations to the 331-page administrative record.

The ALJ's findings include multiple acknowledgments of plaintiff's pain allegations. However, each mention is accompanied by a citation to the medical record that contradicts plaintiff's complaints. See, e.g., Tr. at 21 (noting that plaintiff complained of abdominal pain on March 24, 2003, but that a March 27, 2003 abdominal ultrasound "was essentially unremarkable"); Tr. at 21, 22 (stating that after plaintiff complained of "severe constipation and pain in both groins," a report by a treating physician who examined plaintiff noted that although plaintiff's symptoms "were suggestive of a possible muscle tear around the spermatic cord," no herniations or carpal tunnel syndrome were noted, and "the neurological examination was nonfocal"); id. at 22 (stating that plaintiff reported "left groin pain" during a May 22, 2003 visit to Dr. Abdo, but that Abdo reported that "no hernia" was felt); id. (noting that plaintiff complained of right shoulder pain on June 27, 2003, but "[o]n June 23, 2003, x-rays of the left hip and right shoulder were both unremarkable").

The ALJ also provided sufficient reasons to support the conclusion that plaintiff's claims regarding his functional limitations were not supported by the objective findings. Plaintiff claimed that his pain affected his ability to care for his personal needs and to conduct his daily activities. Tr. at 110. However, as the ALJ noted, plaintiff's daily living

1 included "a reasonable amount of physical activity such as driving, shopping, running
2 errands, and doing housework." Id. at 25.  Second, although plaintiff made claims of
3 depression and anxiety, a medical consultant concluded that plaintiff could still "perform
4 simple tasks which require little or no contact with others especially the general public." Id.
5 Acknowledging plaintiff's limitations, the ALJ found that plaintiff could not perform his past
6 relevant work, but that he nevertheless remained capable of performing sedentary work,
7 which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying
8 articles like docket files, ledgers, and small tools." Id. at 26.

9 Therefore, we conclude that the ALJ properly discounted plaintiff's pain allegations
10 and claims regarding functional limitations.  As a result, we also deny plaintiff's motion for
11 summary judgment on this ground.[3]

12 Therefore, **IT IS ORDERED DENYING** plaintiff's motion for summary judgment
13 (doc. 16) and **GRANTING** defendant's cross-motion for summary judgment (doc. 18).

DATED this 8th day of March, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

---

[3] Plaintiff, who is represented by counsel, filed only one document in support of its motion for summary judgment, which it labeled "Memorandum of Points and Authorities." Although the title page is double-spaced, the remainder of the document consists of over 58 single-spaced paragraphs, in violation of LRCiv 7.1(b).  The document further violates LRCiv 7.1(b) because it includes no page numbers, and several of its pages exceed 28 lines. Citations to precedent are scattered throughout a few paragraphs, but on whole, the document consists of statements of allegedly material facts.  A party moving for summary judgment must file a statement of material facts separately, and in addition to, a memorandum of law. See LRCiv 56.1(a).  Although we reach the merits of plaintiff's motion, its failure to adhere to these requirements provides an alternative ground for denial.  See id.

- 10 -